IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                                                                                    PLAINTIFF

v.                                                                                  CAUSE NO. 1:11CV355 LG-JMR

LHC GROUP, INC., d/b/a GULF
COAST HOMECARE                                                                                          DEFENDANT

## ORDER DENYING PLAINTIFF'S MOTION
## TO EXCLUDE DEFENDANT'S EXPERTS

BEFORE THE COURT is the Plaintiff's Motion [193] to Exclude Defendant's Experts, Dr. Ruth K. Fredericks and Dr. Carl G. Brooking. The plaintiff, Equal Employment Opportunity Commission, contends that Dr. Fredericks does not have adequate knowledge of the legal standards applicable to this ADA case, nor the specific duties of the employee at issue, nor the key facts relating to her employment. The EEOC contends that Dr. Brooking's economic testimony is unnecessary. Defendant LHC Group, Inc., has responded in opposition, and plaintiff Equal Employment Opportunity Commission has replied. After due consideration of the issues presented, the Court finds that the EEOC's objections to the Defendant's experts should be overruled and the testimony admitted.

BACKGROUND

The EEOC filed this lawsuit on behalf of Kristy Sones, a Registered Nurse who was employed by LHC Group, Inc. as a Field Nurse beginning in December, 2006. LHC terminated Sones on June 24, 2009 for poor performance and inability to perform the essential functions of her position. The EEOC alleges that Sones

was terminated because of her disability of epilepsy, in violation of the Americans with Disabilities Act. The EEOC further alleges that LHC failed to accommodate Sones' disability. In this Motion, the EEOC objects to introduction of opinion testimony from neurologist Dr. Ruth K. Fredericks and economist Dr. Carl G. Brooking pursuant to Federal Rule of Evidence 702.

## DISCUSSION

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. A court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Reliability is analyzed under Rule 702, which requires that: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. Further, the expert witness must be qualified "by knowledge, skill, experience, training, or education. . . ." *Id.* A court must exclude an expert witness "if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

Dr. Ruth K. Fredericks

As an initial matter, it does not appear that the EEOC questions Dr. Fredericks' qualifications as an expert in the field of neurology. Her Curriculum Vitae shows that she has extensive experience, having completed a residency and a

fellowship in neurology prior to practicing in Jackson, Mississippi. In 2005, the Mississippi State Senate commended her as "the only licensed Neuro-Oncologist in the State Of Mississippi." (Def. Resp. Ex. 4, ECF No. 204-4). She has an impressive list of achievements and professional memberships. She stated in her deposition that "a lot" of her work involves epilepsy. (*Id*. at Ex. 3 24-25, ECF No. 204-3). Dr. Fredericks is clearly qualified to testify as an medical expert in this case.

The EEOC's objection to Dr. Fredericks' opinion testimony centers on its contention that she does not have sufficient knowledge of Sones' employment conditions or "critical provisions of the ADAAA, including the definition and construction of the provision concerning major life activities and the implementing regulations directly addressing epilepsy, the definition of a 'disability' and any knowledge of reasonable accommodation." (Pl. Mem. 15, ECF No. 194). The EEOC asserts that "Dr. Fredricks' report does not reflect any intellectual rigor or independent effort to learn the essential details of the facts and events relating to Sones' employment." (*Id*. at 16).

LHC responds that Dr. Fredericks' opinions are based on her application of reliable principles and methods. LHC contends that the EEOC's objections to Dr. Fredericks' testimony are merely disagreements with her opinion, which should be addressed during cross-examination rather than in a *Daubert* motion.

Dr. Fredericks reviewed Sones' medical records and other documents such as Sones' EEOC and ADA complaints, job descriptions, and certain depositions in reaching the conclusions in her report. (*See* Def. Resp. Ex. 2 2-3, ECF No. 204-2).

Sones experienced two seizures in her lifetime, and Dr. Fredericks does not dispute the diagnosis of epilepsy. However, Dr. Fredericks expresses scepticism that Sones' reported symptoms after the second seizure in 2009 were caused by the prescribed medication. She noted the appearance of Sones' self-medication in the medical record, as well as instances where Sones tested positive for "several different drugs," including drugs she said were not hers. (*Id.*, Ex. 3 45-46). Dr. Fredericks found Sones' complaints of being very sleepy, and patient complaints of slurred, tired sleep, more consistent with Sones' self-medication with something like Ambien than her prescribed anti-seizure medication.

When asked by the EEOC whether she agreed that Sones' was disabled, Dr. Fredericks stated: "[y]ou know, I have not examined her. But by the records, you know, she has a history of seizures and I was asked to discuss with regard to that. Seizures don't inherently make your [sic] disabled." (*Id.* at 26). Dr. Fredericks' report expresses her doubt that Sones was disabled from epilepsy, noting that Sones testified that on a normal day, she has no limitations on major life activities. Dr. Fredericks noted that Sones, on her own, had stopped taking her anti-seizure medication one year before her second seizure in 2009.

Dr. Fredericks further states that as a registered nurse, Sones had a duty to report any memory or alertness problems she was experiencing, whether caused by medication or a physical impairment. In Dr. Fredericks' opinion, Sones' failure to do so posed a direct threat to the health of the patient and herself. Dr. Fredericks explained in her deposition that patient well-being depended on a care-giver who

was "astute and able to make clear-headed decisions." (*Id.* at 35).

Although the EEOC disagrees with Dr. Fredericks' views of Sones' medical condition, that is the threshold issue in this case. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011) ("'As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability.'"). Dr. Fredericks is qualified by education and experience to assess Sones' medical records and reach conclusions therefrom. Her knowledge of ADA legal standards is irrelevant. It is the jury that will be required to apply ADA standards to make a determination of disability.

The EEOC seems to assert that Sones' epilepsy diagnosis automatically qualifies her as "disabled" under the ADA. (*See* Pl. Mem. 19, ECF No. 194). However, the Fifth Circuit Court of Appeals recently stated that "neither the Supreme Court nor this court has recognized the concept of a *per se* disability under the ADA, no matter how serious the impairment; the plaintiff still must adduce evidence of an impairment that has actually and substantially limited the major life activity on which he relies." *Griffin*, 661 F.3d at 223 (quoting *Waldrip v. Gen. Elec. Co.,* 325 F.3d 652, 654 (5th Cir. 2003)). "Individuals claiming disability status under the ADA may not rely merely on evidence of a medical diagnosis of an impairment but must present evidence that the extent of the limitation caused by their impairment in terms of their own experience is substantial." *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002), *superseded by statute on other*

*grounds*, ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008).

Finally, in regard to the EEOC's objection to Dr. Fredericks' opinion about the danger Sones posed to patients because of her medical condition, the Court finds Dr. Fredericks well-qualified to opine in that area, and her opinions are relevant to the issues in this case. The Court therefore finds that Dr. Fredericks' expert medical opinion testimony is admissible.

Dr. Carl G. Brooking

LHC engaged economist Dr. Brooking to provide lost wage damage calculations. The EEOC does not challenge Dr. Brookings' qualifications or his calculations. Instead, the EEOC argues that no expert opinion is required in this area because the calculation of money damages "could involve pure arithmetic," and requires no methodology other than common sense and arithmetic. (Pl. Mem. 26, ECF No. 194). The EEOC also contends that there is no need for an expert because the damage award will be made by the Court, not a jury.

The EEOC does not support this argument with any case law, and the Court notes that expert economic testimony is routinely admitted to assist the fact-finder in calculating damages in employment cases. Any damage calculation can be reduced to arithmetic. The value of the economic expert's opinion is in advising the fact-finder of the appropriate inputs. Dr. Brooking's expert economic opinion testimony is likely to assist the fact-finder in calculating lost wage damages. The Court therefore finds that Dr. Brooking's opinion testimony is admissible.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiff's Motion

[193] to Exclude Defendant's Experts, Dr. Ruth K. Fredericks and Dr. Carl G. Brooking is **DENIED**.

  **SO ORDERED AND ADJUDGED** this the 22nd day of May, 2013.

            *s/ Louis Guirola, Jr.*
            LOUIS GUIROLA, JR.
            CHIEF U.S. DISTRICT JUDGE